IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NEUROVISION MEDICAL PRODUCTS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> MEDTRONIC PUBLIC LIMITED COMPANY, MEDTRONIC, INC., MEDTRONIC XOMED, INC., HCA HOLDINGS, INC., HEALTHTRUST PURCHASING GROUP, L.P., <br><br> *Defendants*. | § § § § § § § § § § § § § § § § § Case No. 2:16-CV-00127-JRG-RSP |

## MEMORANDUM OPINION AND ORDER

The parties in this patent infringement action appeared to have settled their dispute, but the final settlement agreement fell through when Defendants learned that the Patent Trial and Appeal Board (PTAB) instituted inter partes review (IPR) of one of the asserted patents. Neurovision Medical Products, Inc. ("Neurovision") now seeks emergency relief to enforce the parties' settlement agreement. ECF No. 102. For the following reasons, Neurovision's emergency motion is GRANTED-IN-PART—the Court finds that at least Neurovision and Medtronic entered into an enforceable settlement agreement by email on February 17, 2017.

### BACKGROUND

Neurovision's Complaint alleges that Defendants Medtronic Public Limited Company, Medtronic, Inc., Medtronic Xomed, Inc. (collectively, "Medtronic"), HCA Holdings, Inc. ("HCA"), and HealthTrust Purchasing Group, L.P. ("HPG") infringe U.S. Patent No. 8,467,844 and 8,634,894. ECF No. 1 at 1. The allegations concerning HCA and HPC are based on devices

1

made and sold by Medtronic, and Medtronic is indemnifying HCA and HPC. *See* ECF No. 107 at 1 n.2.

After the Complaint was filed, Medtronic Xomed, Inc. petitioned for IPR of all asserted claims of the '894 and '844 patents—two petitions were filed on July 11, 2016 and one on December 9, 2016 challenging the '894 patent, and one petition was filed on September 19, 2016 challenging the '844 patent. *See* ECF No. 99 at 1. On December 29, 2016, the PTAB instituted IPR of all asserted claims of the '894 patent. *Id.* The parties thereafter filed a joint motion to stay the action, *id.*, and the Court granted the motion, ECF No. 100.

By late December 2016 the parties had attended a mediation session but had not reached a settlement. *See* ECF No. 95. Settlement discussions continued, and in February 2017, a Medtronic director and Neurovision's owner began exchanging offers and counteroffers by email. *See* ECF No. 102-7. Medtronic's director ultimately emailed an offer that included Medtronic's upfront and subsequent payment obligation to Neurovision in addition to Medtronic's agreement to withdraw the four IPR petitions, in exchange for a license to the patents and Neurovision's release from the district court action. *See id.* On February 17, 2017, Neurovision's owner responded to Medtronic's email, indicating that he had "briefed the shareholders and [that] we accept your offer." *Id.* at 6-7. This response email summarized various terms, including payment, the patent license, and Medtronic's agreement to withdraw the four IPRs. *Id.* at 7. Neurovision's owner concluded, "Advise us as to how you wish to proceed to create the contract." *Id.*

Counsel for the parties began exchanging drafts of a settlement agreement, and on March 23, 2017, Medtronic's counsel emailed Neurovision's counsel a finished agreement with only "a final clarifying edit." *See* ECF No. 102 at 5. Drafts of the agreement and the March 23 agreement all included clauses indicating that the agreement was effective upon signing and "WITNESS

HEREOF" clauses, in addition to empty signature blocks. *See* ECF No. 106 at 1-2. Edits to the settlement agreement appear to have been complete by the morning of March 23 when Neurovision's counsel sent Medtronic's counsel a signed copy of the agreement. *See* ECF No. 102 at 5-6.

Things changed later that afternoon when the PTAB released its decision instituting IPR of the '844 patent. *See* ECF No. 104. The timing of the PTAB's decision, however, was not unexpected. The parties expected the PTAB's decision on the '844 patent no later than March 30, 2017. *See* ECF No. 99 at 1. By statute, the PTAB must decide whether to institute IPR within three months after the patent owner's preliminary response, or if no response is filed, within three months after the date any preliminary response is due. 35 U.S.C. § 314(b). Neurovision filed a preliminary response on December 30, 2016, and thus the PTAB's institution decision was due no later than March 30, 2017.

The PTAB's decision on the '844 patent nevertheless prompted Medtronic to inform Neurovision on March 27, 2017 that Medtronic "does not intend to execute the [settlement agreement] in its current form" because "circumstances changed materially last week when the PTAB instituted inter partes review of the '844 patent." *See* ECF No. 102 at 6. Neurovision filed its emergency motion to enforce the settlement agreement on March 28, 2017. ECF No. 102. Specifically, Neurovision asks the Court to force Medtronic to sign the March 23 agreement, which, according to Neurovision, is the final written agreement. *See id.*

## DISCUSSION

A district court in the Fifth Circuit has inherent power to enforce a settlement agreement in a case pending before it. *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 390 (5th Cir. 1984). The court has the ability to summarily enforce a settlement "if no material facts are in dispute,"

but "when opposition to enforcement of the settlement is based not on the merits of the claim but on a challenge to the validity of the agreement itself, the parties must be allowed evidentiary hearing on disputed issues of the validity and scope of the agreement." *In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015) (internal quotations and citations omitted).

"Questions regarding the enforceability or validity of such agreements are determined by federal law—at least where the substantive rights and liabilities of the parties derive from federal law." *Mid-S. Towing*, 733 F.2d at 389. To the extent state law applies, the parties have not identified a conflict of law that would affect the outcome of the dispute. Moreover, federal contract law is often indistinguishable from general state contract law, and where federal law is undeveloped, courts rely on treatises and general state law principles to fill gaps in federal law. *In re Deepwater Horizon*, 786 F.3d at 354-55.

The parties' dispute raises two questions—first, whether the email exchange culminating on February 17, 2017 qualifies as a valid settlement agreement, and second, whether the subsequent and more complete March 23, 2017 agreement is enforceable, even though Defendants had not signed it. Much of the parties' briefing is devoted the second question, but the first question is relatively easy to answer. Because the Court believes resolution of the first question will allow the parties to complete their settlement, the Court does not address the second question.

There is no dispute that Medtronic's director and Neurovision's owner exchanged a number of offers and counteroffers between February 13 and February 17, 2017. *See* ECF No. 102-7. Most important, Defendants do not contend that the email from Medtronic's director on February 17, 2017 was *not* a valid offer under applicable contract law. *See id.* at 7. Indeed, Neurovision's owner responded to the email by saying "we accept your offer," in addition to summarizing material terms of the agreement. *See id.* at 6-7. In response to Neurovision's

4

purported acceptance, Medtronic's director wrote, among other things, "This is excellent news. Thanks for working through." *Id.* at 6. The Medtronic director did not dispute any material term summarized in Neurovision's email, nor did the Medtronic director take issue with Neurovision's characterization of the state of negotiations as an "accepted offer." *See id.*

Accordingly, there is no dispute of material fact that as of February 17, 2017, Medtronic and Neurovision entered into a settlement agreement. *See In re Deepwater Horizon*, 786 F.3d at 355 (contract formation judged by parties' "overt acts and words"). The material terms of the settlement agreement are evident from Medtronic and Neurovision's email exchange—Medtronic's payment obligation, the patent license (or ability to "practice the art" as Neurovision characterized it), and Medtronic's agreement to withdraw the four pending IPRs. *See* ECF No. 102-7 at 7.

Defendants' arguments to the contrary are entirely without merit. First, Defendants contend that "Neurovision *expressly disclaimed* that it was trying to enforce this email exchange as a contract." ECF No. 108 at 2 (citing Neurovision Br.4 n.2, ECF No. 102). This is simply not true. The footnote cited by Defendants simply explains Neurovision's belief that the March 23 agreement would resolve the dispute with all Defendants but in no way does this footnote disclaim that the earlier email exchange between Neurovision and Medtronic was not itself a settlement agreement. *See* ECF No. 102 at 4 n.2. Second, Defendants contend that the email exchange "did not even involve all of the parties to this case." *See, e.g.*, ECF No. 108 at 2. But it did involve at least Neurovision and Medtronic, and thus at least these two parties have an enforceable agreement.

Third, Defendants argue that the email exchange was missing "numerous material terms," *id.*, yet Defendants do not identify any specific material term that is missing. "Courts generally

5

find there is agreement on all of the material terms of settlement where the parties have agreed upon the monetary amount of the settlement payment and the fact that plaintiffs will release specific claims." *See In re Deepwater Horizon*, 786 F.3d at 357 n.26 (internal quotation and citation omitted). Fourth, Defendants contend that the material terms that *were* included in the email exchange are "unintelligibly vague," presumably because Neurovision's email refers to the ability to practice "the patent," as opposed to "the patents," plural. *See* ECF No. 108 at 2. The email exchange as a whole, however, unambiguously clarifies that the parties were referring to both asserted patents. *See* ECF No. 107-2.

Finally, Defendants insist that "the emails expressly contemplated a subsequent writing." *See* ECF No. 108 at 2. This, of course, is irrelevant to whether an agreement was formed on February 17, 2017. "Courts routinely enforce settlement agreements even where the precise wording . . . has not been finalized." *In re Deepwater Horizon*, 786 F.3d at 357 n.26 (internal quotations and citation omitted). To be clear, the email exchange does contemplate a subsequent writing. Neurovision's email refers to creating "the contract," for example, but this unquestionably refers to a subsequent and more complete written agreement. Nothing in the email exchange culminating in the parties' settlement agreement *conditions* the agreement on a subsequent or more detailed written agreement. It is true, as Defendants contend, that subsequent draft agreements and the final March 23 agreement include integration clauses, but unless the March 23 agreement is enforceable, these clauses have no legally-operative effect.

Finally, Neurovision requests that the Court sanction the Defendants and award fees for the positions taken in opposition to Neurovision's emergency motion. The Court finds such an award unnecessary because Neurovision's primary request was to have the Court enforce the March 23 agreement. Defendants raise bona fide arguments for why this agreement is not

enforceable until it is signed, namely the numerous parts of the agreement suggesting that signatures are required. Although Defendants' arguments concerning the February 17 email agreement are meritless, this does not warrant sanctions under the circumstances.

## CONCLUSION

Because the Court finds that there is no dispute of material fact that Neurovision and Medtronic entered into a valid settlement agreement by email on February 17, 2017, Neurovision's emergency motion, ECF No. 102, is **GRANTED-IN-PART**. Because there is not sufficient evidence in the record to conclude that Medtronic also bound Defendants HCA and HPG on February 17, the Court's determination is limited to the agreement formed between Neurovision and Medtronic.

The Court believes that this determination will enable the parties to resolve their dispute regarding the settlement. Accordingly, and given the time-sensitive nature of the dispute, Neurovision's request that the Court enforce the March 23 agreement is deferred. To the extent foreshadowing may affect the parties' final resolution of this action, the Court would likely find an evidentiary hearing necessary before determining whether the March 23 agreement is enforceable without Defendants' signatures.

Apr 4, 2017

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE